IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


LUCILE ASKEW, Individually )
and as Administratrix of   )
the Estate of Linzie Askew,)
                           )
     Plaintiff,            )
                           )          CIVIL ACTION NO.
     v.                    )          3:08cv865-MHT
                           )              (WO)
R & L TRANSFER, INC., and  )
KENNETH LEE HOLT, an       )
Individual,                )
                           )
     Defendants.           )

OPINION AND ORDER

Plaintiff Lucile Askew ("Askew"), as representative

for the estate of her deceased husband, brings this

lawsuit against defendants Kenneth Holt ("Holt") and

R & L Transfer, Inc. ("Transfer") for the wrongful death

of her husband in a vehicular accident.[1] Askew charges the

defendants with state-law claims of simple negligence,

_____

    1.  In her complaint, Askew states that she brings
this lawsuit "individually" as well as in her capacity as
representative for the estate of her late husband.  At
the pretrial of this case, however, counsel for Askew
made clear that Askew is pursuing this case in her
representative capacity only.

simple wantonness, negligent entrustment, and negligent supervision and training.[2]   The court has jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship).

This case is currently before the court on Transfer's motion for summary judgment.  For the reasons discussed below, summary-judgment will be granted in favor of Transfer on all claims except that of simple negligence.

------

2.  In her complaint, Askew charges Transfer with "Negligent or Wanton Entrustment" and "Negligent or Wanton Hiring, Training, or Supervision."  However, in her response to the summary-judgment motion, Askew uses the headings "There is Substantial Evidence of Negligent Entrustment" and "There is Substantial Evidence of Negligent Training and Supervision by R & L Transfer, Inc.," and she addresses only the issues of negligent entrustment, Pl.'s Resp. M. Summ. J. 14, and negligent supervision and training, Pl.'s Resp. M. Summ. J. 21. Therefore, the other potential contentions (wanton entrustment, negligent hiring, and wanton hiring, training, and supervision) are deemed to have been abandoned.  See Edwards v. Hyundai Motor Mfg. Alabama, LLC, 603 F. Supp.2d 1336, 1357 (M.D. Ala. 2009) (Thompson, J.) (citing Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp., 182 F.3d 888, 892 (Fed. Cir. 1999) (affirming the "unremarkable proposition that assertions made in the pleadings [,] ... but not made in opposition to a motion for summary judgment, need not be considered by the district court ... in ruling on the motion for summary judgment")).  In any event, no evidence or argument has been offered to support any of the abandoned contentions.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

In the early morning hours of October 17, 2008, Askew's husband was last in a line of motorists stopped in traffic on I-85 North in Chambers County, Alabama. Holt, driving a tractor-trailer, collided with the

3

vehicle driven by Askew's husband.  Askew's husband died as a result of the accident.

At the time of the accident, Holt was an employee of R & L Carriers Shared Services, LLC ("Shared Services") but was driving a tractor-trailer owned by Transfer and leased to Gator Freightways, Inc. ("Gator").  The interrelationship among Transfer, Shared Services, and Gator is complex:  R & L Carriers, Inc. ("Carriers") owns 100 % of Transfer, Gator, and other related companies.  Carriers also shares ownership of Shared Services with Transfer, Gator, and three other related companies.

The same 23 individuals, led by Chief Executive Officer Ralph L. Roberts, comprise the officers of Transfer, Carriers, and Gator.  A sub-group of seven of these individuals operates Shared Services along with an additional Vice President of Tax, who is not an officer in the other companies.

4

### III. DISCUSSION

### A. Negligence

Askew charges Transfer with negligence on the basis of respondeat superior. "To recover from a tortfeasor's employer on the theory of respondeat superior, the plaintiff must show by substantial evidence that the employee's act was within the scope of the employee's employment." Hulbert v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 22, 23 (Ala. 1998). There is no dispute that Holt was acting within the scope of his employment when his tractor-trailer collided with the vehicle driven by Askew's husband; however, there is substantial disagreement between the parties as to whether Holt was employed by Transfer.

In Alabama, "proof of ownership of a motor vehicle causing injury raises a rebuttable presumption that the person in the possession and control of that vehicle was the agent or servant of the owner, and was acting within the line and scope of his employment." Thompson v.

5

Havard, 235 So. 2d 853, 856 (Ala. 1970).  Furthermore, even when the presumption is challenged, "if there is any evidence which reflects upon the credibility of that evidence by defendant on that question, or from which an inference may be drawn to a different result ... the question of whether the operator of the [vehicle] was defendant's agent acting in the line and scope of his authority should be submitted to the jury." Durbin v. B.W. Capps & Son, Inc., 522 So. 2d 766, 767 (Ala. 1988) (citation omitted).  Thus, Askew must demonstrate that there is a genuine issue of material fact as to whether Holt was an employee of Transfer.  Askew has met this burden.

Transfer contends that it has rebutted the ownership presumption by demonstrating that Holt's truck was leased by Gator and that Holt was employed by Shared Services; Transfer maintains that it is a completely separate entity from both Gator and Shared Services.  In contrast, Askew contends that there is evidence that the operations

6

of Transfer, Carriers, Gator, and Shared Services are so tightly intertwined that the companies and their operations are virtually indistinguishable. Pl.'s Resp. M. Summ. J. 5.

Transfer, Carriers, and Gator are managed by the same officers; the same family owns all three companies; and Shared Services is owned, in part, by Transfer, which is itself owned by Carriers. Wade Dec. 2-5. Furthermore, Carriers Safety Director Gerald Krissa testified to "R & L's" relationship with Holt. Krissa Dep. 43-44. While the Safety Director may have been referring to Carriers in his testimony, it is also reasonable to conclude, especially when viewing the evidence in a light most favorable to Askew, that "R & L" denotes Transfer. Id. The "R & L CARRIERS" website explains that Transfer and Gator are "sister regional carriers that collectively operate as R+L Carriers," implying that they operate as one larger entity. R & L Carriers Frequently Asked

Questions, http://www.rlcarriers.com/faq.asp (last visited on December 10, 2009).

It is a well-recognized general principle of law that a corporate structure may be pierced or disregarded "where the corporate entity has been used as a subterfuge and to observe it would work an injustice." Fletcher Cyclopedia § 41.10. Thus, under Alabama law, "a separate legal existence will not be recognized when a corporation is 'so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another.' ... Whether the separate legal entity of a corporation may be 'pierced' and personal liability imposed is 'a question of fact treated as an evidentiary matter to be determined on a case by case basis.'" Environmental Waste Control, Inc. v. Browning-Ferris Industries, Inc., 711 So. 2d 912, 914 (Ala. 1997) (citations omitted). In making this determination of whether a corporate structure should be disregarded so that it and another company should be

8

treated as one, the court must look to a number of non-exhaustive factors: (a) company A owns all or most of the capital stock of company B; (b) the two companies have common directors or officers; (c) one company finances the other; (d) one company subscribes to all the capital stock of the other company or otherwise caused its incorporation; (e) one company has grossly inadequate capital; (f) one company pays the salaries and other expenses or losses of the other; (g) one company has substantially no business except with the other company or no assets except those conveyed to it by the other company; (h) in the papers of company A or in the statements of its officers, company B is described as its department or division, or company B's business or financial responsibility is referred to as company A's own; (i) one company uses the property of the other company as its own; (j) the directors or executives of one company do not act independently in the interest of that company but take their orders from the other

company; and (k) the formal legal requirements of the two companies are not observed.  See id. at 915.

Applying the above legal principle and listed factors and viewing the evidence in a light most favorable to Askew, the court concludes that Askew has presented a genuine issue of material fact as to whether Transfer, albeit a corporation, and its affiliate companies are, through their operations and public presentation, so intertwined as to be essentially one, such that Holt, in working for Shared Services, also worked for Transfer.

## B. Wantonness

Askew also charges Transfer with wanton behavior based on Holt's conduct.  The State of Alabama defines "wantonness" as "Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  1975 Ala. Code § 6-11-20(b)(3).  This is a high standard of culpability and "not merely a higher degree of culpability than negligence."  Jinright v.

10

<u>Werner Enterprises, Inc.</u>, 607 F. Supp.2d 1274, 1276 (M.D. Ala. 2009) (Thompson, J.) (quoting <u>Tolbert v. Tolbert</u>, 903 So. 2d 103, 114 (Ala. 2004) (quotation marks and citations omitted)). Alabama courts will allow a jury to determine whether conduct was wanton if there is any evidence that would support that determination. <u>Cash v. Caldwell</u>, 603 So. 2d 1001, 1003 (Ala. 1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.").

Askew has not provided any facts from which it could be inferred that Holt recklessly or consciously caused the accident. Holt stated in his deposition that he was traveling through fog on the morning of the accident and, as a result, was unable to stop in time to avoid hitting Askew's husband's vehicle. Holt Dep. 227-28. Askew contradicts Holt's description of the weather that morning, but she presents no evidence that Holt saw Askew's husband's car in time to stop or that Holt was driving in a wanton manner. There is no evidence that

11

Holt was driving at a great, or otherwise unsafe, speed, was using drugs or alcohol, ignored traffic signals, or otherwise was conducting himself with "a reckless or conscious disregard of the rights or safety of others." 1975 Ala. Code § 6-11-20(b)(3).

Askew's submissions show a "total lack of evidence from which the jury could reasonably infer wantonness." Cash, 603 So. 2d at 1003.  Therefore, summary judgment will be granted in favor of Transfer on Askew's wantonness claim.

## C. Negligent Entrustment

Askew maintains that, under Alabama law, Transfer is directly liable for her husband's death because it negligently entrusted the tractor-trailer to Holt.

To establish a cause of action for negligent entrustment, Askew must show: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." Pryor v. Brown & Root USA, Inc., 674 So. 2d 45, 51 (Ala.

1995) (citations omitted).  Bracketing whether Transfer entrusted the vehicle to Holt, the court finds that Askew's claim fails because there is no evidence in the record to suggest that Holt was incompetent to drive the tractor-trailer.

"Incompetence" is defined as the "state or fact of being unable or unqualified to do something." Halford v. Alamo Rent-A-Car, LLC, 921 So. 2d 409, 416 (Ala. 2005) (quoting Black's Law Dictionary 780 (8th ed. 2004)).  In Alabama, "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." Halford, 921 So. 2d at 413-14.  As a professional tractor-trailer driver for nearly a decade, Holt was competent to drive the tractor-trailer at the time of the accident.

For several years before the accident, Holt drove the same stretch of I-85 North, five nights a week, without incident.  Holt Dep. 216-17.  In the nine-plus years Holt worked of full-time for Shared Services, he was issued two moving violations (in March 1999 and September 2007)

13

14

and was involved in four minor accidents (only one of which seemingly involved a second motor vehicle).[3]  Pl.'s Resp. M. Summ. J. 12.  At the time of the accident, Holt had a valid commercial driver's license.

These blemishes on an otherwise clean professional driving record do not amount, under the law, to incompetence.  The law requires that a driver have had a "demonstrated ability to properly drive a vehicle," Halford, 921 So. 2d at 413-14 (Ala. 2005); it does not require that he have a record completely free of mistake. See, e.g., Pryor, 674 So. 2d at 52 ("[Defendant]'s prior driving record--two speeding tickets and a suspended prosecution of a DUI charge over a 10-year period--is not sufficient to support a claim of negligent entrustment."); Thompson, 235 So. 2d at 857 ("[P]roof of two moving violations or accidents within a two year

---

3.  Holt (1) damaged yard equipment while driving a tractor on company property, (2) hit a parked vehicle, cracking its fender, (3) hit an animal of some kind while driving, and (4) was involved in a sideswipe accident. Pl.'s Resp. M. Summ. J. 12-13.

period prior to [this] accident ... is probably insufficient [to create a fact issue of the driver's incompetence.]").[4]   As Holt was not incompetent at the time of the accident, summary judgment in favor of Transfer on Askew's negligent-entrustment claim is appropriate.


## D. Negligent Supervision and Training

Askew charges that, under Alabama law, Transfer is liable for negligently supervising and training Holt.  To support a claim of negligent supervision and training, Askew must demonstrate that (1) Holt committed a tort recognized under Alabama law, see Stevenson v. Precision Standard, Inc., 762 So. 2d 820, 824 (Ala. 1999), (2) Holt was incompetent to drive his tractor-trailer, see Lane v. Central Bank of Alabama, 425 So. 2d 1098, 1100 (Ala.

---

4.   Askew attempts to compare the facts of this case with those in Edwards v. Valentine, 926 So. 2d 315 (Ala. 2005).  Askew neglects to mention, however, that the individual entrusted with the vehicle in Valentine had been convicted on multiple occasions for driving under the influence and was known to be a "habitual drunkard."

1983), (3) Transfer had actual notice of Holt's incompetence or would have known had it exercised due diligence, see Armstrong Bus. Servs. V. AmSouth Bank, 817 So. 2d 665, 682 (Ala. 2001), and (4) Transfer failed to respond to this notice adequately. See id.

Because, as discussed above, no evidence in the record suggests that Holt was incompetent, Askew's claim of negligent supervision and training fails.   See Lane, 425 So. 2d at 1100.   Summary judgment in favor of Transfer on Askew's negligent hiring-and-training claim is appropriate.

### E. The Graves Amendment

Transfer contends that the Graves Amendment, 49 U.S.C. § 30106, "a federal tort reform statute which purports to shield rental car companies from certain vicarious liability suits," Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1244 (11th Cir. 2008), protects it from any liability in this litigation.   Because only Askew's simple negligence claim has survived summary

16

judgment so far, the court will address the amendment as to this claim only.

The amendment, enacted in 2005, provides in relevant part:

> "An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner) for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease if--
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).
>
> ***
>
> "The term 'affiliate' means a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner. In the preceding sentence, the term 'control' means the power to direct the management and policies of a person

17

> whether through ownership of voting
> securities or otherwise."

49 U.S.C. §§ 30106(a), 30106(d)(1).  Thus, in order for
the Graves Amendment to apply, Transfer must be "engaged
in the trade or business of renting or leasing motor
vehicles" and, with regard to Holt's accident, there must
have been "no negligence" on its part or the part of an
"affiliate."  49 U.S.C. §§ 30106(a).

    The court need not reach the question whether
Transfer was in the business of renting or leasing motor
vehicles, for there is sufficient disputed evidence to
defeat the amendment's requirement that there was "no
negligence ... on the part of the owner (or an affiliate
of the owner)."  Id.  Transfer argues that Holt was not
its employee, but rather that he worked for Shared
Services, an affiliate.  Even if Holt was an employee of
Shared Services, Transfer's argument fails for two
reasons.  First, as discussed above, Askew has presented
a genuine issue of material fact as to whether Transfer
and its affiliate companies are, through their operations

18

and public presentation, so intertwined under Alabama law
as to be essentially one, such that Holt, in working for
Shared Services, also worked for Transfer.   Second,
because the evidence supports the conclusion that Shared
Services (acting through its employee Holt) was
vicariously negligent, see Hulbert, 723 So. 2d at 23, and
because there is evidence that Shared Services meets the
definition of an "affiliate" under the Graves Amendment,
a jury could reach the conclusion that the amendment does
not shield Transfer from liability because there was
negligence on the part of its affiliate.

Transfer argues that the requirement that "there is
no negligence ... on the part of the owner (or an
affiliate of the owner)" is ambiguous and thus that the
court should look to the legislative history underlying
the Graves Amendment as well as the relevant case law
when interpreting its meaning.   The company insists that
"[t]here is no indication in the legislative history that
the negligence savings clause was intended to impose
liability on a vehicle owner for the negligence of an

19

affiliate." Def. Br. Graves Amend. at 7.  While the legislative history might be silent on this issue, that silence does not defeat any easy interpretation here because the statute is unambiguous. <u>See</u> <u>United States v. Gonzales</u>, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").  The statute is clear and straightforward that, if the owner of the vehicle or an "affiliate" of the owner is negligent, then the statute does not shield the owner from liability for the affiliate's negligence.

Moreover, this construction of the statute not only avoids "absurd results," <u>Lewis v. Barnhart</u>, 285 F.3d 1329, 1331 (11th. Cir. 2002) (courts will interpret statutes to avoid "absurd results"), it is fully consistent with the purpose of the statute, which is "to shield rental car companies from certain vicarious liability suits," <u>Garcia</u>, 540 F.3d at 1244.  Moreover, the plain language of the statute ensures that companies that rent vehicles to others (including perhaps even

20

their affiliates) are protected from liability but only if there is no negligence on their part or on the part of an affiliate _if_ the affiliate meets the amendment's strict definition of "a person other than the owner that directly or indirectly controls, is controlled by, or is under common control with the owner," with the "term 'control' [to] mean[] the power to direct the management and policies of a person whether through ownership of voting securities or otherwise." 49 U.S.C. § 30106(d)(1).

Thus, not all affiliates fall within in the amendment's definition; rather only where the "control" relationship between the owner and the affiliate is so close as to meet the amendment's definition (one company has "the power to direct the management and policies" of the other) has Congress chosen to treat the affiliate and the owner as one and preclude the protection of the amendment when one of them has been negligent.

This reading of the reach of the amendment's protection is consistent with the Supreme Court directive "that the interposition of a corporation will not be

allowed to defeat a legislative policy." <u>Anderson v.</u>
<u>Abbott</u> 321 U.S. 349, 363 (1944).  Therefore, so as to
assure that car rental companies do not falsely or
unfairly attempt to get around the owner-negligence
restriction by setting up affiliates, Congress wrote into
the Graves Amendment what is essentially a mechanism for
determining when an owner's and an affiliate's business
structures (be they corporate or otherwise) will be
disregarded or pierced and the two will be treated as
one.  This court is, obviously, bound to follow that
legislative directive.  Note, <u>Piercing the Corporate Law</u>
<u>Veil: The Alter Ego Doctrine Under Federal Common Law</u>, 95
Harv. L. Rev. 853, 856 (1982) ("[W]hen Congress has
enacted particular statutory guidelines for going behind
the corporate structure ... courts must defer to the
congressional will.").

***

Accordingly, it is ORDERED as follows:

(1) Defendant R & L Transfer, Inc.'s motion for
summary judgment (Doc. No. 30) is denied on

22

plaintiff Lucile Askew's claim for simple negligence. This claim will go to trial against defendant R & L Transfer, Inc.

(2) Defendant R & L Transfer, Inc.'s motion for summary judgment (Doc. No. 30) is granted on all other claims asserted by plaintiff Askew, with judgment entered in favor of defendant R & L Transfer, Inc. and against plaintiff Askew on these other claims.

DONE, this the 30th day of December, 2009.

　　　　　　　　　　　　　　　/s/ Myron H. Thompson　　
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE